[No. S151705. Feb. 26, 2009.]

STATE BOARD OF CHIROPRACTIC EXAMINERS et al., Petitioners, v. THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent; CAROLE M. ARBUCKLE, Real Party in Interest.

**COUNSEL**

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, David Chaney, Chief Assistant Attorney General, Gordon Burns, Deputy State Solicitor General, Jacob Appelsmith, Assistant Attorney General, Vincent J. Scally, Jr., Miguel Neri, Fiel D. Tigno, Alicia M. B. Fowler, Lyn Harlan and Noreen P. Skelly, Deputy Attorneys General, for Petitioners.

No appearance for Respondent.

Garcia & Associates and Gaspar Garcia II for Real Party in Interest.

**OPINION**

**KENNARD, J.**—The Legislature enacted the California Whistleblower Protection Act (Gov. Code, § 8547 et seq.)[1] (the Act) to protect the right of state employees "to report waste, fraud, abuse of authority, violation of law,

---

[1] All further statutory references are to the Government Code unless otherwise indicated.

or threat to public health without fear of retribution." (§ 8547.1.) In adopting the Act, the Legislature expressly found "that public servants best serve the citizenry when they can be candid and honest without reservation in conducting the people's business." (*Ibid.*) Therefore, the Act authorizes a state employee who is the victim of whistleblower retaliation to bring "an action for damages" in superior court (§ 8547.8, subd. (c); hereafter section 8547.8(c)) and to recover, if appropriate, punitive damages and attorney fees (*ibid.*), but the employee must "first file[] a complaint with the State Personnel Board . . . , and the board [must] . . . *issue*[], *or fail*[] *to issue, findings pursuant to Section 19683*" (*ibid.*, italics added).

Here, the employee filed a complaint with the State Personnel Board, and the board issued *adverse* findings. The Court of Appeal held that the employee had to succeed in having those adverse findings set aside before she could proceed with her court action for damages under section 8547.8(c), because otherwise the adverse findings would be binding in the damages action, precluding recovery. Because this holding undermines the Act's purpose of protecting whistleblower employees by assuring them the procedural guarantees and independent factfinding of a superior court damages action, we reverse.

I

A. *Factual Background*

State employee Carole M. Arbuckle alleged the following.

She was hired as an office assistant by the State Board of Chiropractic Examiners (SBCE) and was eventually promoted to management services technician. At the SBCE, which issues licenses to chiropractors practicing in the state, Arbuckle's duties related to "cashiering and license renewal," although she was also involved in issuing citations for unlicensed practice. On May 11, 2001, she received a telephonic inquiry from an outside caller concerning the license status of Dr. Sharon Ufberg, the chairperson of the SBCE. She verified for this caller that Dr. Ufberg's license had expired several months earlier. Fifteen minutes later, Dr. Ufberg contacted her, saying she forgot to pay her renewal fee. Later that day, Dr. Ufberg paid the fee. Because the license had been invalid from January 1, 2001, through May 11, 2001, for failure to pay the renewal fee, Arbuckle noted that fact on an "information line" in the computer database. During the next few months, she issued numerous citations to other individuals for practicing under expired licenses, but when she inquired several times about issuing a citation to

Dr. Ufberg, Jeanine R. Smith, the executive director of the SBCE, told her not to issue the citation.

In the wake of these events, Arbuckle confronted a stressful work environment, including numerous indignities, disputes, and acts of favoritism. Some of these incidents were minor in themselves, but together they constituted a breakdown of trust and cooperation in the workplace, and in particular a breakdown in the relationship between her and the SBCE's executive director, Jeanine Smith. Among other things, SBCE managers changed Arbuckle's duties, denied her requests for a modified work schedule and a light-duty assignment, cancelled her alternative work schedule, and transferred her to a different unit.

### B.  Administrative and Judicial Proceedings

On July 23, 2002, Arbuckle filed a complaint with the State Personnel Board, alleging whistleblower retaliation in violation of the Act. The board's executive officer conducted an investigation in accordance with board regulations, during which each side submitted detailed documentary evidence and written argument. Arbuckle, for example, submitted approximately 360 pages of documents in support of her complaint.

On January 24, 2003, the executive officer of the State Personnel Board issued a 16-page "Notice of Findings," recommending dismissal of Arbuckle's complaint. The executive officer concluded that some of the alleged whistleblower activity did not constitute "[p]rotected disclosure[s]" of "[i]mproper governmental activit[ies]" as those terms are used in the Act. (§ 8547.2, subds. (b), (d).) The executive officer further determined that some of the alleged acts of retaliation were not sufficiently adverse to constitute violations of the Act. In regard to the few remaining allegations, the executive officer found an insufficient showing of a nexus between Arbuckle's protected disclosure and the adverse employment actions the SBCE had taken against Arbuckle. The executive officer found persuasive the SBCE's evidence that the actions it had taken against Arbuckle were for reasons unrelated to Arbuckle's protected disclosures.

Under the regulations of the State Personnel Board that were then in effect (Cal. Code Regs., tit. 2, §§ 56–56.8, as adopted Register 2002, No. 34 (Aug. 23, 2002) p. 1712[2]; hereafter 2002 Regulations), a complaining employee

---

[2] The text of the 2002 Regulations is posted online at <http://www.spb.ca.gov/WorkArea/showcontent.aspx?id=2790> (as of Feb. 26, 2009).

who received adverse findings from the board's executive officer could file a petition for a hearing before the board. (2002 Regs., § 56.3, subd. (a).) The board could deny such a petition and adopt the findings of its executive officer (*id.*, § 56.3, subd. (f)), or it could grant the petition and assign the matter to an administrative law judge (ALJ) for a hearing (*id.*, § 56.3, subd. (g)). Here, the executive officer's findings expressly informed Arbuckle of her right to petition the board for this hearing before an ALJ: "Either party has the right to file a petition for hearing with the five-member State Personnel Board . . . . Any petition for hearing must be filed no later than 30 days following service of this Notice of Findings. If no party files a petition for hearing within 30 days . . . , this recommendation shall become the final decision of the State Personnel Board."

Arbuckle did not exercise this right. Instead, on February 21, 2003, she filed a damages action in superior court against the SBCE and its executive director, Jeanine Smith, claiming whistleblower retaliation in violation of Government Code section 8547.8. Arbuckle included a cause of action under Labor Code section 1102.5, which prohibits retaliation against an employee who reports a violation of state or federal law, and she also included a tort cause of action for violation of public policy (see *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167 [164 Cal.Rptr. 839, 610 P.2d 1330]). The trial court sustained defendants' demurrer to the *Tameny* claim, and that issue is not before us. Defendants moved for summary judgment with regard to the remaining causes of action, arguing that Arbuckle had failed to exhaust her administrative and judicial remedies. The trial court denied the motion, but the Court of Appeal issued an alternative writ and stayed the proceedings in the trial court.

The Court of Appeal held that Arbuckle had failed to exhaust both administrative and judicial remedies. The court stated that exhaustion of administrative and judicial remedies in this case required more than merely filing a complaint with the State Personnel Board and receiving the findings of its executive officer; Arbuckle also needed to complete the administrative process by petitioning the board for a hearing before an ALJ, and if this hearing request was denied, she then needed to seek a writ of mandate from the courts in an effort to have the board's findings set aside. The Court of Appeal concluded that Arbuckle, by failing to take these steps, had in effect conceded her right to judicial review of the State Personnel Board findings, and the findings therefore had the same legal significance as a final judgment of a reviewing court. On that basis, the Court of Appeal held that the executive officer's specific finding that no retaliation occurred was binding in

Arbuckle's later civil action, and the trial court therefore should have granted defendants' motion for summary judgment as to all causes of action.

The Court of Appeal granted a writ of mandate, ordering the trial court to grant summary judgment in favor of defendants. We granted Arbuckle's petition for review.

## II

Section 8547.8(c) imposes liability "in an action for damages" on "any person who intentionally engages in acts of reprisal, retaliation, threats, coercion, or similar acts against a state employee" for disclosing improper governmental activities or unsafe conditions. But this provision includes an important caveat: "However, any action for damages *shall not be available* . . . unless the injured party has first filed a complaint with the State Personnel Board . . . , and the board has *issued, or failed to issue, findings pursuant to Section 19683*." (§ 8547.8(c), italics added.) Section 8547.8(c) refers only to the issuance of "findings," nothing more. On its face, it does not require the complaining employee to petition the State Personnel Board for a hearing before an ALJ, nor does it require the employee to seek writ review of the board's findings. Section 8547.8(c) also makes express reference to section 19683, thereby clarifying the precise type of findings that satisfy the caveat.

Section 19683, subdivision (a), provides: "The State Personnel Board shall initiate a hearing or investigation of a written complaint of reprisal or retaliation . . . within 10 working days of its submission. The executive officer shall complete *findings* of the hearing or investigation within 60 working days thereafter . . . ." (Italics added.) This provision clearly uses the term "findings" to refer to the *initial decision* of the board's executive officer (issued within 70 days of the filing of the complaint), and therefore section 8547.8(c)'s express cross-reference to section 19683 indicates that this initial decision constitutes the "findings" that satisfy section 8547.8(c).

In summary, the plain meaning of the statutory language supports Arbuckle's argument that there was no legal impediment to her filing an action in the superior court immediately after receiving the State Personnel Board's adverse findings. The Court of Appeal, however, read into the statutory scheme the requirements that the complaining employee petition the board for a hearing before an ALJ and then, if unsuccessful, seek a writ of administrative mandate in superior court to set aside adverse findings.

## A. *Exhaustion of Administrative Remedies*

■ Nothing in section 19683 indicates that complaining employees must request a hearing before an ALJ after receiving adverse findings from the State Personnel Board. Moreover, this omission is significant in that subdivision (b) of section 19683 expressly authorizes "the supervisor, manager, employee, or appointing power" to request a hearing before the State Personnel Board regarding any finding sustaining the allegation of whistleblower retaliation. Therefore, if one looks only at the statutory provisions, a complaining employee has no option to petition the board for a hearing after receiving the executive officer's adverse findings; rather, the statute extends that option *only to the responding party.*

Nevertheless, at the time Arbuckle filed her complaint with the State Personnel Board, its *regulations* permitted the complaining party to seek a hearing before the board to challenge adverse findings. Section 56.2, subdivision (m), of the 2002 Regulations stated: "The Notice of Findings shall inform *each* named party of his or her respective right to file a Petition for Hearing Before the Board, pursuant to the provisions of Section 56.3 [complainant] and/or 56.4 [respondents]." (Italics added.) Section 56.3 of the 2002 Regulations provided in relevant part: "(a) If the Notice of Findings concludes no retaliation occurred, the *complainant may* file a Petition for Hearing before the Board. [¶] . . . [¶] (f) If the Petition for Hearing is denied, the Board shall issue a Decision that adopts the findings of the Executive Officer as its own decision in the matter. [¶] (g) If the Petition for Hearing is granted by the Board, the Board shall issue a resolution rejecting the findings of the Executive Officer and assign the matter to an administrative law judge, who shall conduct an evidentiary hearing . . . ." (Italics added.)

Therefore, under the State Personnel Board's *regulations*, Arbuckle could have petitioned the board for a hearing before an ALJ after receiving the board's adverse findings, and the board might have granted such a hearing and revised its findings in Arbuckle's favor. But because the board's regulations cannot amend the statutory scheme, we have no basis for concluding that the Legislature intended this additional administrative remedy to be a mandatory step that employees must pursue before bringing a civil damages action.

■ In explaining its holding, the Court of Appeal stated: "[I]t is not usually enough to *invoke* an administrative forum, a claimant must pursue the matter through all extant administrative review procedures," thereby completing the administrative process. We agree that exhausting all possibilities for

relief at the administrative level is generally a prerequisite to obtaining judicial review of administrative findings. (*Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment Relations Bd.* (2005) 35 Cal.4th 1072, 1080 [29 Cal.Rptr.3d 234, 112 P.3d 623].) But section 8547.8(c) lacks language making this administrative exhaustion a prerequisite to bringing the specific type of damages action permitted under that provision. Section 8547.8(c) authorizes, not an action *to review* the decision of the State Personnel Board, but *a completely separate* damages action in the superior court in which the employee will enjoy all the procedural guarantees and independent factfinding that generally accompany such actions. Exhaustion of every possible stage of an administrative process is not particularly necessary where the civil action that the Legislature has authorized is not one to review the administrative decision, but rather a completely independent remedy. Here, the only prerequisite to bringing suit that the statute mentions is the issuance of (or failure to issue) "findings pursuant to Section 19683," which occurred when the board's executive officer issued the "Notice of Findings" on January 24, 2003.

Moreover, this asymmetry regarding the administrative remedies the statute extends to a complaining employee as compared to those it extends to a responding party makes sense in light of the overall statutory scheme. The employee is not bound by the State Personnel Board's decision, and therefore the Legislature gave the employee no statutory right to pursue an intraagency appeal of the executive officer's findings. The Legislature, however, gave the board significant authority to take action against a retaliating party, including ordering specific relief and awarding compensatory damages. Therefore, to protect that party's rights, the Legislature authorized an intraagency appeal available to that party only. (Gov. Code, § 19683, subd. (b).)

■ We therefore conclude, contrary to the Court of Appeal's holding, that Arbuckle was not required to seek an ALJ hearing before bringing a civil damages action in superior court. Instead, it sufficed for Arbuckle to receive the findings of the board's executive officer.

It is true that the Notice of Findings at issue here concluded with only a recommendation, not a final determination of the State Personnel Board. The Notice of Findings stated: "Based upon the foregoing findings and conclusions of law, and the entire record in this case, it is hereby *recommended* that: [¶] The Complaint . . . be dismissed and that [Arbuckle's] request [for disciplinary action] be denied." (Italics added.) Nevertheless, the same findings also stated: "If no party files a petition for hearing within 30 days following service of this Notice of Findings, this recommendation *shall*

*become the final decision of the State Personnel Board.*" (Italics added.) This latter statement was in accord with the board's regulations, which provided: "If no Petition for Hearing is received . . . , the Notice of Findings [issued by the executive officer] shall be deemed to be the Board's final Decision in the matter . . . ." (2002 Regs., § 56.5.) Thus, by operation of the board's regulations, the executive officer's "recommended" findings became the board's "final [d]ecision," and section 8547.8(c) requires no more.

### B. *Exhaustion of Judicial Remedies*

Not only did the Court of Appeal require Arbuckle to petition the State Personnel Board for a hearing before an ALJ to challenge the board's adverse findings, but it also required her to exhaust *judicial* remedies by filing a petition for a writ of mandate under Code of Civil Procedure section 1094.5, challenging the board's adverse findings *and succeeding in having the superior court set those findings aside.* Only then, the Court of Appeal held, could Arbuckle pursue a civil damages action in superior court.

A petition for a writ of administrative mandate under Code of Civil Procedure section 1094.5 may be brought only "for the purpose of inquiring into the validity of any final administrative order or decision made as the result of a proceeding in which *by law a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested in the inferior tribunal, corporation, board, or officer.*" (Code Civ. Proc., § 1094.5, subd. (a), italics added.) The Court of Appeal concluded that the statutory requirements that the State Personnel Board "initiate a hearing or investigation of a written complaint" and that its "executive officer . . . complete findings" (Gov. Code, § 19683, subd. (a)) satisfied the conditions of Code of Civil Procedure section 1094.5. In this regard, the court noted that under the board's regulations the executive officer's "investigation" constituted a documentary hearing and the exercise of discretion in the determination of facts.

The Court of Appeal next drew a significant substantive conclusion from the availability of writ of mandate review under Code of Civil Procedure section 1094.5. It asserted that, after such review, a civil judgment upholding the findings of the State Personnel Board would have a collateral estoppel effect in any later civil action, including a damages action under Government Code section 8547.8(c). The validity of this assertion is far from clear. (See *Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 76 [99 Cal.Rptr.2d 316, 5 P.3d 874] (*Johnson*); see also *Westlake Community Hosp. v. Superior Court* (1976) 17 Cal.3d 465, 484 [131 Cal.Rptr. 90, 551 P.2d 410] (*Westlake*);

*Knickerbocker v. City of Stockton* (1988) 199 Cal.App.3d 235, 242–245 [244 Cal.Rptr. 764]; but see *Pacific Lumber Co. v. State Water Resources Control Bd.* (2006) 37 Cal.4th 921, 944 [38 Cal.Rptr.3d 220, 126 P.3d 1040]) [emphasizing the conditions an administrative factfinding proceeding must satisfy before collateral estoppel will apply].) Nevertheless, the Court of Appeal reasoned that a *failure* to seek a writ under Code of Civil Procedure section 1094.5 constituted a default, elevating the State Personnel Board's decision to the same status as a court-rendered civil judgment. The Court of Appeal stated: "If the [State Personnel Board] issues *findings adverse to the employee*, unless the employee succeeds in overturning that decision by a writ of administrative mandate, a civil tort suit on the same claim would be barred by judicial exhaustion (issue preclusion). . . . The [board] is an administrative agency endowed by the state Constitution with quasi-judicial powers. [Citation.] When a party to a quasi-judicial proceeding fails to challenge the agency's adverse findings by means of a writ of mandate action in superior court, the adverse findings are binding in later civil actions. [Citations.]"

Applying this rule, the Court of Appeal concluded that the State Personnel Board's specific finding here that no retaliation occurred precluded relitigation of that issue and required judgment for defendants: "Because . . . Arbuckle has not set [the board's finding] aside, it precludes her civil action which is predicated on the same factual claims of retaliation." Quoting at length from our opinion in *Johnson, supra*, 24 Cal.4th at pages 69–70, the Court of Appeal stated that writ of mandate review of the board's decision was necessary to " 'accord[] proper respect to [the] administrative agency's quasi-judicial procedures' " and to " ' "provid[e] a uniform practice of judicial, rather than jury, review of quasi-judicial administrative decisions." ' " Otherwise, in the court's view, the administrative proceeding would be a "waste of time" and "meaningless." Therefore, the Court of Appeal held that only a *favorable* decision from the State Personnel Board (either before or after writ review) would clear the way for a damages action in superior court under section 8547.8(c); an unfavorable decision would preclude a damages action, because its resolution of the factual issues could not be relitigated.

■ The error in the Court of Appeal's reasoning lies in its assumption that Arbuckle's failure to pursue further administrative remedies, coupled with her failure to seek writ of mandate review of the State Personnel Board's findings, elevated those findings to the same status as a final civil judgment rendered after a full hearing, precluding relitigation of the factual issues the board's executive officer resolved against Arbuckle. It is true as a *general* matter that writ review of an adverse administrative decision is a necessary step before pursuing other remedies that might be available.

(*Johnson, supra*, 24 Cal.4th at p. 76; *Westlake, supra*, 17 Cal.3d at p. 484.) It is also *generally* true that if a litigant fails to take this step, and if the administrative proceeding possessed the requisite judicial character (see *Pacific Lumber Co. v. State Water Resources Control Bd., supra*, 37 Cal.4th at p. 944), the administrative decision is binding in a later civil action brought in superior court. But, as discussed, the Legislature expressly authorized a damages action in superior court for whistleblower retaliation (§ 8547.8(c)), and in doing so it expressly acknowledged the existence of the parallel administrative remedy. It did not require that the board's findings be set aside by way of a mandate action; rather, it gave as the only precondition to the damages action authorized in section 8547.8(c), that a complaint be filed with the board and that the board "issue[], or fail[] to issue, findings." (*Ibid.*) The bareness of this statutory language suggests that the Legislature did not intend the State Personnel Board's findings to have a preclusive effect against the complaining employee.

■ The specific statutory authorization at issue here makes this case analogous to the high court's decision in *University of Tennessee v. Elliott* (1986) 478 U.S. 788, 795–796 [92 L.Ed.2d 635, 106 S.Ct. 3220], which concluded that certain statutory language in title VII of the federal Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.) indicated Congress's intent that state administrative findings *not* be binding in title VII actions. Thereafter, this court in *Johnson, supra*, 24 Cal.4th at pages 74–75, distinguished *Elliott* on this ground. Here, therefore, where we have specific statutory language suggesting that adverse findings by the State Personnel Board are *not* binding in a section 8547.8(c) damages action, the high court's decision in *Elliott* seems to be the more relevant precedent, rather than our decision in *Johnson, supra*, 24 Cal.4th 61, on which the Court of Appeal here relied. As we recently explained, discussing limitations on administrative collateral estoppel, " '[A] court may not give preclusive effect to the decision in a prior proceeding if doing so is contrary to the intent of the legislative body that established the proceeding in which res judicata or collateral estoppel is urged.' " (*Pacific Lumber Co. v. State Water Resources Control Bd., supra*, 37 Cal.4th at p. 945, quoting *Brosterhous v. State Bar* (1995) 12 Cal.4th 315, 326 [48 Cal.Rptr.2d 87, 906 P.2d 1242].)

Our conclusion does not make the proceeding before the State Personnel Board a "waste of time" and "meaningless." We can think of several instances in which the Legislature has required or permitted disputing parties to complete a nonbinding adjudicative procedure before proceeding with a damages action in superior court. For example, an employee who does not receive wages has the option of filing a wage claim with the Labor Commissioner, who holds an informal hearing and issues a decision. (Lab.

Code, §§ 98, 98.1.) Labor Code section 98.2 then permits either party to "appeal" the Labor Commissioner's decision "to the superior court, where the appeal [is] heard de novo." Additional analogies can be made to nonbinding arbitration under the mandatory fee arbitration act (see Bus. & Prof. Code, § 6204, subd. (a)) and judicial arbitration, which is also nonbinding (see Code Civ. Proc., § 1141.20). The Legislature may consider such nonbinding proceedings to be useful as a means of promoting settlement, and in many cases nonbinding proceedings may be an effective way of resolving minor disputes with minimal expense to the parties.

Moreover, the Court of Appeal's conclusion that the State Personnel Board's findings are binding in a court action for damages under Government Code section 8547.8(c) would unduly restrict that remedy. Writ review under Code of Civil Procedure section 1094.5 is limited to the record compiled by the administrative agency, and the agency's findings of fact must be upheld if supported by "substantial evidence." (Code Civ. Proc., § 1094.5, subd. (c).) Writ review under Code of Civil Procedure section 1085 is even more deferential; the agency's findings must be upheld unless arbitrary, capricious, or entirely lacking evidentiary support. (*Strumsky v. San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 34–35, fn. 2 [112 Cal.Rptr. 805, 520 P.2d 29].) We need not decide now which type of writ review would be available in the case of a documentary hearing like that conducted here by the State Personnel Board's executive officer,[3] but under either of standard of review it would be very difficult for a complaining employee to have the board's adverse factual findings overturned. Therefore, in nearly every case, an adverse decision from the board would leave the employee without the benefit of the damages remedy set forth in section 8547.8(c). As the trial court pointed out in its ruling: "Petitioners who cannot overcome th[e] deferential standard [of review] would be completely deprived of the remedy provided by the statute, i.e. an action for damages." In such cases, the whistleblower employee's only remedy would be the documentary hearing before the State Personnel Board's executive officer, without even the opportunity to address the executive officer in a face-to-face discussion. Nothing in section 8547.8(c) suggests that the Legislature intended the damages remedy created in that provision to be so narrowly circumscribed, and such a narrow interpretation of the damages remedy would hardly serve the Legislature's purpose of protecting the right of state employees "to report

---

[3] In concluding that writ review under Code of Civil Procedure section 1094.5 was available here, the Court of Appeal relied on a line of decisions holding that a documentary hearing can meet the requirements of that section. (See, e.g., *Friends of the Old Trees v. Department of Forestry & Fire Protection* (1997) 52 Cal.App.4th 1383, 1391–1392 [61 Cal.Rptr.2d 297]; *Mahdavi v. Fair Employment Practice Com.* (1977) 67 Cal.App.3d 326, 334 [136 Cal.Rptr. 421].) We express no view regarding the validity of these decisions or the Court of Appeal's application of them.

waste, fraud, abuse of authority, violation of law, or threat to public health without fear of retribution." (§ 8547.1.)

Finally, the Court of Appeal's reasoning would produce sweeping consequences the Legislature could not have intended. The Court of Appeal held that only an *adverse* decision by the State Personnel Board would bar a later damages action in superior court, whereas a damages action would be available if the board's findings were *favorable* to the whistleblower employee. The Court of Appeal did not, however, explain how this distinction would work in practice. The State Personnel Board's remedial powers are very broad. It is expressly authorized to "order *any appropriate relief*, including, but not limited to, [specific performance and] . . . compensatory damages" (§ 19683, subd. (c), italics added), and also including "a just and proper penalty" imposed against individual wrongdoers (§ 19683, subd. (d)). Therefore, a truly favorable decision of the State Personnel Board would give the complaining employee a *full recovery*, and a civil action for damages under section 8547.8(c) would be unnecessary. Conversely, if the State Personnel Board's findings were even *slightly adverse* to the employee (i.e., awarding anything short of a full recovery), the State Personnel Board's adverse findings would, under the Court of Appeal's reasoning, have a collateral estoppel effect, precluding any award of additional damages. Thus, under the Court of Appeal's rationale, the court action for damages that is authorized by section 8547.8(c) would be, to a large extent, superfluous. That result cannot be what the Legislature intended.

We conclude therefore that section 8547.8(c) means what it says: An employee complaining of whistleblower retaliation may bring an action for damages in superior court, but only *after* the employee files a complaint with the State Personnel Board and the board "has issued, or failed to issue, findings." So long as the board has issued findings (or the deadline for issuing findings has passed), the employee may proceed with a damages action in superior court regardless of whether the board's findings are favorable or unfavorable to the employee.[4] Moreover, once the board has issued findings, the employee need not pursue additional administrative remedies and need not challenge the findings by way of a petition for a writ of administrative mandate.[5] In concluding to the contrary, the Court of Appeal erred.

---

[4] If the executive officer's findings are favorable to the employee, and the responding party has requested a hearing before the State Personnel Board, the question arises whether the employee can pursue a civil damages action even while the respondent's administrative appeal is pending, resulting in two parallel proceedings adjudicating the same dispute. That case is not before us, and we express no view on the matter.

[5] We disapprove *California Public Employees' Retirement System v. Superior Court* (2008) 160 Cal.App.4th 174 [72 Cal.Rptr.3d 561] to the extent it reaches a contrary conclusion.

## III

We reverse the judgment of the Court of Appeal and remand the case to that court with instructions to deny defendants' petition for writ of mandate.

George, C. J., Baxter, J., Werdegar, J., Chin, J., Moreno, J., and Corrigan, J., concurred.